[Civ. No. 4886.   Fourth Dist.   July 1, 1955.]

MARCELLA JEAN HART, as Guardian, etc., Appellant, v. ELIZABETH RICHARDSON, Respondent.

White & Condra and Francis J. Maher for Appellant.

Edwin M. Campbell for Respondent.

BARNARD, P. J.—Alva E. Richardson, who will be referred to as the plaintiff, owned four lots in National City on which he operated a motel. On March 25, 1951, he and the defendant were married in Yuma, Arizona. On November 15, 1951, he deeded the motel property to the defendant and himself as joint tenants. On April 11, 1952, the defendant filed an action for divorce, and another action for a partition of the motel property. The complaint in the divorce action alleged that the community property consisted of the furniture in the motel, and that the parties owned a motel business situated on property held by them in joint tenancy. The

prayer was for a divorce, for all of the community property, and for such other relief as the court deemed proper. Summons and a copy of the divorce complaint were served on this plaintiff on April 14, 1952.

On May 23, 1952, this defendant signed a deed reconveying her interest in the motel property to this plaintiff, and he executed and delivered to her a note for $13,375, secured by a trust deed on the property. This deed and trust deed were recorded on June 4, 1952. On the same day (May 23) this plaintiff also signed a stipulation, entitled in the divorce case, stating that said action might be heard on the complaint as a default matter and without notice to him, and further stipulating that a certain 1950 automobile and a certain note for $13,375 secured by trust deed on the motel property were this defendant's separate property, and that there was no community property of the parties. This stipulation was filed in the divorce action on June 6, 1952. This defendant also dismissed her action for partition.

An interlocutory decree of divorce was entered on June 16, 1952, in which the court also found and adjudged that there was no community property, and that the 1950 automobile and this note for $13,375, secured by a trust deed, were the separate property of this defendant.

On November 21, 1952, this plaintiff was adjudicated an incompetent person, and a guardian was appointed. On February 11, 1953, this action was filed. The complaint alleged that on May 23, 1952, the plaintiff owned this real estate as his separate property; that he was then, and for more than a year had been, incompetent; that on April 11, 1952, the defendant filed an action to partition said property, and an action for divorce; that on May 23, 1952, the defendant threatened to place a receiver on this property, and supplied the plaintiff with liquor; that while the plaintiff was in an intoxicated and incompetent condition, which was known to the defendant, she caused him to sign a stipulation stating that the $13,375 note and trust deed, and the 1950 automobile, were her separate property; and that at the same time she fraudulently induced him to sign this note and trust deed. The prayer was for a cancellation of this note and trust deed, and this written stipulation.

The answer denied the material allegations of the complaint and alleged that on November 15, 1951, the parties became the owners of the real property as joint tenants; that on April 11, 1952, the defendant filed an action for

divorce, and another action for partition of the real property; that summons was served on April 14, 1952; that, thereafter, the defendant deeded her interest in the real property to the plaintiff in consideration of his assigning to her the automobile, and his execution and delivery to her of the note for $13,375 secured by a trust deed on the real property; that this consideration was reasonable and just; and that no offer has been made by anyone to restore to the defendant her interest in the real property. The answer further alleged the entry of the divorce decree in the other action decreeing that the automobile and note were her separate property; that said decree had become final; that said decree has become res judicata as to any issue in this action; and that the plaintiff is estopped from seeking any cancellation of the documents mentioned in the complaint.

After a trial the court found that all of the material allegations of the complaint are untrue; that all of the denials and allegations in the answer are true; that the same issue of property rights as that here involved was presented and determined by the court in the divorce proceeding; that the court had jurisdiction in the divorce action to determine the right and title to the note and trust deed; that the plaintiff had due notice of said divorce action and the opportunity to be heard therein, and was then and there competent so to do; that he was not prevented in any manner from a full participation in said divorce action; and that no extrinsic fraud was used or practiced in the procurement of said divorce decree. A judgment was entered in favor of the defendant, from which the plaintiff has appealed.

It is first contended that the court erred in holding that the judgment of divorce was res judicata as to the issue in this action. It is argued that the issue of fraud was not a necessary issue in the other action, and that the adjudication in the divorce decree that the $13,375 note was the separate property of the wife exceeded the prayer of the complaint with respect to property rights, which was only that the court award her all of the community property. ■ The general rule is that by a default judgment no relief can be given in excess of that demanded by the complaint. (*Burtnett* v. *King*, 33 Cal.2d 805 [205 P.2d 657, 12 A.L.R.2d 333].) In that case, it was stated that "The essence of the policy underlying section 580 of the Code of Civil Procedure, *supra*, is that in default cases, defendant must be given notice of what judgment may be taken against him . . ." In that case it was

further pointed out that no contention of estoppel had been made, and that there was nothing in the record from which it could be said that the doctrine of estoppel was applicable to the situation there involved. In the instant case, this plaintiff furnished a stipulation to the effect that there was no community property and that this note was the separate property of this respondent, which stipulation was used in the case. ▮ In *Capital Nat. Bank* v. *Smith*, 62 Cal.App. 2d 328 [144 P.2d 655], the court said: "When a written stipulation of facts authorizes the rendering of judgment accordingly, that agreement should be construed with and it becomes controlling over the pleadings. It has been held the stipulation merges with the pleadings and is controlling with respect to the agreed facts therein contained." ▮ In *Morrow* v. *Morrow*, 40 Cal.App.2d 474 [105 P.2d 129], it is said: "As a general rule, however, one may be estopped by an agreement or stipulation made in a judicial proceeding . . . The case for estoppel by stipulation is greatly strengthened, of course, where the stipulation has been acted upon and the adverse party would be injured if it were not given effect." ▮ In accordance with the stipulation the court here found that there was no community property, for which the wife had prayed, and found that the note in question was her separate property. The situation was changed by the stipulation, and this plaintiff was not without notice of the form of judgment that might be expected. In effect, he consented to the judgment which was entered. He should be estopped from questioning the effect of his stipulation, and the court so found.

▮ It is further contended that the court erred in adjudging that no extrinsic fraud was used in the procurement of the judgment of divorce. It is first argued that the respondent's joint tenancy interest in the real property was conveyed to her in November, 1951, for a fiduciary purpose only, that she thereby became a trustee for this plaintiff, and that her conduct in exacting the execution of the note and trust deed in order to obtain a reconveyance of the trust corpus must, as a matter of law, be held to have been fraudulent. The respondent testified that this plaintiff gave her this interest in the property in November, and that he said at the time that everybody wanted to take the place away from him so he wanted her to have an interest in it for his own protection. While there was some evidence justifying a conflicting inference, not only was the question one of fact but this matter

could, and should if relied on, have been raised in the prior action. Moreover, this contention was not raised in the pleadings or at the trial of this action and is raised for the first time on appeal. The respondent had this interest in the real property, and was asking for some community property when this stipulation was signed. By way of a partial settlement of the controversy this plaintiff entered into an agreement with the respondent, and executed papers accordingly. The facts support the estoppel which was found by the court.

It is also argued that the court refused to permit this plaintiff to introduce evidence to prove that at the time these parties were married the respondent had another husband living in New York. In that connection, the respondent was asked by this plaintiff's counsel ''Did you disclose to the court at the time of obtaining your divorce decree that you had a husband living in New York?'' An objection to this question was sustained. No other evidence of such a prior marriage was offered. ██ The validity of a marriage is a matter which is necessarily intrinsic in a divorce decree. (*Mumma* v. *Mumma*, 86 Cal.App.2d 133 [194 P.2d 24].)

██ To constitute extrinsic fraud there must have been some representation or concealment which prevented the plaintiff from having his day in court. (*Gale* v. *Witt*, 31 Cal.2d 362 [188 P.2d 755].) If error be assumed in this connection, no extrinsic fraud appears.

██ It is also contended that the finding that no extrinsic fraud was used in procuring the divorce decree is unsupported by the evidence; and that the evidence ''indicates'' that the respondent knew that this plaintiff was incompetent when she procured his signature to the waiver and to the note and trust deed. The court found against the appellant in both of these respects, and these findings are amply supported by the evidence. This plaintiff was called to the stand by appellant's counsel and his testimony takes up 50 pages of the transcript. He testified that he did not remember being married to the respondent; that he was told the next day that he was married, but he did not believe it; that he did not remember anything about the deed conveying to her a joint tenancy in the property; that he remembered nothing about the divorce except that he was told that she was getting a divorce; that he remembered signing the stipulation and trust deed and note in the lawyer's office, but that he did not know what he was signing; and in general, that he could remember nothing about any business transaction during the

15 months in question. He could not remember anything about the conversation in the lawyer's office at the time the papers were signed, or what the lawyer had said to him about the agreement and the effect of the papers, although these things had been taken down in shorthand at the time and were read to him. A reading of his testimony discloses why it was not believed by the trial judge. There was also evidence that he talked about the matter to his brother-in-law, to a friend, and to a justice of the peace between the time he was served with summons in the divorce action and the time the papers were signed on May 23; that he was advised to see a lawyer; and that he refused to do so. The findings in question are also supported by the testimony of the respondent.

If it be assumed that the decree in the divorce action was not res judicata with respect to the note here in question, and that there was extrinsic fraud in procuring that decree the plaintiff, or someone in his behalf, would of course be entitled to bring this action. However, it was still incumbent upon the appellant to prove that this note was obtained by undue influence or fraud. This burden was not met, and the court's findings to the contrary are sustained by the evidence.

The judgment is affirmed.

Griffin, J., and Mussell, J., concurred.