[Civ. No. 22391.   Second Dist., Div. Three.   Apr. 3, 1958.]

RUBY CLOMA RICHARDS McELHATTEN, Appellant, v. JAMES ALBERT McELHATTEN, Respondent.

Lawrence R. Horton for Appellant.

No appearance for Respondent.

SHINN, P. J.— Plaintiff appeals from an adverse judgment in her action for annulment of her marriage to defendant, James Albert McElhatten. She alleged in her complaint that she participated in a ceremony of marriage with defendant on December 4, 1951 in Tijuana, Mexico, a year later in another ceremony of marriage in Glendale, California, and at the times of said purported marriages and each of them defendant had another wife living by virtue of a marriage which was then and continued to remain in full force and effect. Defendant having been duly served with

process and having defaulted, plaintiff submitted her evidence, following which the court entered a judgment which recited "The Court finds that the allegations of the complaint are not true, and that plaintiff is not entitled to an annulment of marriage from defendant"; whereupon it was decreed that an annulment of the marriage was denied. Although the finding negatives each and every allegation of the complaint, such could not have been the intention of the court. If given literal effect, the finding would be contrary to the established facts as to the ceremonies of marriages in which defendant participated.

Defendant was called as a witness on behalf of plaintiff and testified that he married Barbara June Gamble August 15, 1947. He also testified that on or about December 4, 1952, he participated in a marriage ceremony with plaintiff Ruby Cloma Johnson McElhatten. Certified copies of the certificates of each marriage were received in evidence. Defendant testified further that at all times subsequent to August 15, 1947, he had lived and been continuously employed in California; also that Barbara June Gamble McElhatten is living and a resident of California. He further testified that he had never instituted an action for divorce in the United States and had never been served with process in an action for divorce brought by Barbara; that he "attempted" to get a divorce in Mexico "December 4, 1951"; he was in Mexico but two days; he had no intention of living in Mexico or in any place other than California, and he immediately returned to California. This evidence was received November 15, 1956, and the cause was submitted.

There were further proceedings December 12, 1956. Apparently, due to press of other business, some of the facts developed had escaped the minds of the court and counsel. It was stated: "The Court is denying the decree of annulment on the ground that the plaintiff in this action is not in a position to collaterally attack the Mexican decree of divorce which it was testified the defendant obtained in Tijuana on December 2, 1951; that the other party to the marriage which resulted in the Mexican divorce is a party interested in the matter and is not a party to this action.

"If I remember correctly, the evidence showed that Barbara June Gamble had remarried; is that correct?

"MR. HORTON: I believe that was the testimony, your Honor.

"THE COURT: There is no showing that the jurisdiction of

the Mexican Court was not contested in the Mexican divorce proceeding. Therefore the decree of annulment is denied." There was no evidence that defendant had procured a divorce in Mexico December 2, 1951, or at any other time. Neither was there any evidence that Barbara June Gamble had remarried, although that question was irrelevant to any issue in the case.

The only tenable conclusion from the evidence was that defendant's marriage to Barbara was in force at the time of his purported marriage to plaintiff. The clear inference from defendant's testimony was that he did not obtain even a purported decree of divorce during the two days he was in Tijuana or at any other time, and there was no evidence that he ever brought suit. Moreover, a resident of California cannot step across the international boundary into Mexico as a casual visitor and bring back a signed paper which is entitled to any consideration as a decree of divorce. The mere assertion that a marriage can be dissolved in that manner deserves from a California court nothing but ridicule and reproach. The evidence which was elicited from defendant that he and his former wife were residents of California, that he had never sued for divorce there nor been sued, dispelled any presumption that their marriage had ever been dissolved in any jurisdiction. The record discloses no ground upon which a decree of annulment could be properly refused.

The judgment is reversed with directions to enter a decree in accordance with the prayer of the complaint.

Vallée, J., concurred.

WOOD (Parker), J.—I dissent. The burden of proving that defendant's marriage to Barbara (his first wife) had not been dissolved by judicial decree was upon plaintiff. Whether plaintiff met that burden was a question of fact to be decided by the trial judge. The defendant was the only witness. The questions as to the weight and credibility of his testimony were exclusively for the trial judge to decide. The trial judge was not required to decide that, as a matter of law, the marriage of plaintiff and defendant was invalid. There is a presumption that the marriage of plaintiff and defendant was valid. The basis for this presumption is that it is presumed that defendant is innocent of crime and he did not commit bigamy when he married plaintiff. That presumption is evidence. If, in the opinion of the trial judge, that presumption was not

rebutted or overcome by other evidence, the trial judge was required to deny a decree of annulment.

At the hearing upon the default herein, plaintiff called defendant as a witness under the provisions of section 2055 of the Code of Civil Procedure. Defendant testified that he married Barbara June Gamble on August 15, 1947, and that thereafter he lived continuously in California (the certificate of that marriage was received in evidence); he had not instituted an action for divorce in the United States against Barbara, and he had never been served in a divorce action commenced by her; on December 4, 1951, he attempted to get a divorce in Mexico; he went to Mexico on December 1 or 2, 1951, for the purpose of attempting to get a divorce; he was in Mexico two days; at the time he went to Mexico he did not have any intention of living in Mexico or any place other than California; he returned to California and has lived in California since that time; on December 4, 1952, he participated in a marriage ceremony with the plaintiff herein, Ruby Cloma Johnson McElhatten (the certificate of that marriage was received in evidence); after December 4, 1952, he has seen Barbara June Gamble McElhatten alive, and she is a resident of California at this time. (Time of the trial was November 15, 1956.)

The testimony of defendant with respect to attempting to get a decree in Mexico was as follows: "Q. [by attorney for plaintiff] Did you ever attempt to get a divorce elsewhere? A. Yes. Q. Where was that? A. Mexico. Q. When was that? A. December the 4th. THE COURT: Louder, please. THE WITNESS: December 4th, '51. Q. BY MR. HORTON [attorney for plaintiff]: When did you go to Mexico? Did you go to Mexico for that purpose? A. Yes."

No copy or purported copy of a Mexico decree of divorce was offered or received in evidence. It thus appears that there was no evidence that there was a Mexico decree of divorce. Also, there was no evidence that there was not a Mexico decree of divorce.

"It is well established that when a person has entered into two successive marriages, a presumption arises in favor of the validity of the second marriage, and the burden is upon the party attacking the validity of the second marriage to prove that the first marriage had not been dissolved by the death of a spouse or by divorce or had not been annulled at the time of the second marriage." (*Estate of Smith,* 33 Cal.2d 279, 281 [201 P.2d 539].) In *Hamrick* v. *Hamrick,*

119 Cal.App.2d 839 [260 P.2d 188], it was said at page 848 (in quoting from another case) : " ' . . . the burden is cast upon the party asserting guilt or immorality to prove the negative—that the first marriage had not ended before the second marriage.' "

In the present case there was testimony by defendant that his first wife was living at the time of his second marriage. As above stated, whether plaintiff met the burden of proving that the first marriage had not been dissolved by judicial decree was a question of fact to be decided by the trial judge. As above stated, there was no evidence that there was not a Mexico decree of divorce as to the first marriage. The only evidence with respect to the nonexistence of a divorce decree in the United States (as to the first marriage) was that defendant testified that he had not instituted an action for divorce in the United States against his first wife (Barbara), and he had never been *served* in a divorce action commenced by her. His testimony that he had not been served in a divorce action by his first wife was a legal conclusion. The trial judge was not required to infer or conclude from such testimony (regarding nonservice) that defendant's first wife had not obtained a divorce. In *Estate of Borneman,* 35 Cal.App.2d 455 [96 P.2d 182], Mrs. Borneman, who sought to prove that her marriage had not been dissolved by judicial decree, testified that she had not commenced a divorce action and had never been served with papers in a divorce action commenced by her husband. She also introduced evidence that there was no record of such action in San Francisco (where her husband had resided in 1912). There was no evidence therein showing the husband's place of residence from 1912 to 1938, the date of his death. The court said at page 460: "That proof was insufficient to rebut the presumption of innocence. [Citations.] The burden rested on Mrs. Borneman to introduce such evidence as would convince the mind of the trial court that the first marriage had not been dissolved. [Citation.] This apparently she did not do. The most she did was to create a conflict in the evidence but a mere conflict in the evidence will not warrant a reversal." It thus appears that it has been held that testimony that a spouse had not been served with process is not adequate proof that the other spouse had not obtained a divorce. In *Estate of Smith, supra,* 33 Cal.2d 279 [201 P.2d 539], it was said at page 283: "In order to show that no divorce or annulment had been obtained it is not necessary to prove that an examination was made of the public records

of jurisdictions other than those in which the parties to the marriage were domiciled." In the present case there was testimony by defendant that his first wife was a resident of California "at this time." The reporter's transcript shows as follows: "Q. Is she [Barbara, first wife] a resident of California at this time? A. Yes." There was no evidence as to the domicile of the first wife from 1947, when she married defendant, to the time of trial (on November 15, 1956). Defendant testified that he had lived in California since the marriage in 1947. There was no evidence as to when he and his first wife (Barbara) separated. Even if it be assumed that her domicile was in Los Angeles County, there was no evidence that an examination was made of the public records of Los Angeles County to ascertain whether the first wife had obtained a decree of divorce.

In *Maslow* v. *Maslow*, 117 Cal.App.2d 237 [255 P.2d 65], which was an action for annulment of marriage, the court said at page 243: "Where the evidence will support different inferences, the choice of inferences is for the trial court; and its finding, based on the inferences drawn, cannot be disturbed on appeal. [Citation.] The trier of fact is the *exclusive* judge of the credibility of the witnesses. [Citations.] The trial court is free to disbelieve and reject the testimony of witnesses even though they are uncontradicted and unimpeached. [Citations.] These rules apply with particular emphasis to an action for annulment since the state is a silent but active third party to every action to dissolve a marriage. The state is interested in seeing to it that no marriage is declared void as a result of fraud or collusion, and that the statutory grounds on which the annulment is sought actually do exist. [Citation.]"

The court found that the allegations of the complaint are not true. One of those allegations was in substance that (at the times of the two marriage ceremonies with plaintiff) the marriage of defendant to Barbara June Gamble (the first wife) was and still is in force. The effect of that finding is that plaintiff did not overcome the presumption of validity of her marriage to defendant, and did not meet the burden of proving that the marriage of defendant to Barbara (the first wife) had not been dissolved by judicial decree.

Under the evidence here the trial judge was not required to conclude that appellant had met the burden of proving that the first marriage had not been dissolved by judicial decree when the second marriage occurred.

The trial judge stated, at the time of submitting the matter for decision, that under the decision in *Mumma* v. *Mumma*, 86 Cal.App.2d 133 [194 P.2d 24], he did not believe that the plaintiff could attack the Mexican decree collaterally, and that plaintiff was not injuriously affected by that decree at the time of its rendition. The judge also stated, about a month later when he rendered his oral decision in open court, that an annulment was denied on the ground that plaintiff herein was not in a position to collaterally attack the Mexican decree of divorce which it was testified the defendant obtained in Tijuana on December 2 (4), 1951, and that the other party to the marriage which resulted in the Mexican divorce is a party interested in the matter and is not a party to this action. The judge said further: "If I remember correctly, the evidence showed that Barbara June Gamble [McElhatten] had remarried; is that correct? The attorney for plaintiff herein replied: "I believe that was the testimony, your Honor." The judge said: "There is no showing that the jurisdiction of the Mexican Court was not contested in the Mexican divorce proceeding. Therefore the decree of annulment is denied." It is apparent that the judge was of the belief that there was evidence that a decree of divorce had been rendered in Mexico. According to the reporter's transcript, however, defendant did not testify that he obtained a decree in Mexico. His testimony was that he attempted to get a divorce in Mexico. The reporter's transcript does not show that there was testimony with reference to the remarriage of the first wife. The reference, however, to such purported testimony indicates the importance of requiring adequate proof herein of nonexistence of a judicial decree dissolving the first marriage.

In my opinion the judgment should be affirmed.